IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

ANTHONY DAVILA,

    Plaintiff,

v.

LOGAN MARSHALL, Sheriff, and
CHRISTOPHER DURDEN, Captain,

    Defendants.

CIVIL ACTION NO.: CV112-149

## ORDER

Plaintiff, who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), filed a cause of action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-1, *et seq.* ("RLUIPA"), contesting certain conditions of his confinement while he was housed at the McDuffie County Detention Center in Thomson, Georgia. Defendants filed a Motion for Summary Judgment, to which Plaintiff initially failed to file a Response. The undersigned granted Defendants' Motion as unopposed by Order dated September 2, 2014. Plaintiff filed a Motion for Relief and asserted that he never received the Clerk's Notice that Defendants had filed a Motion for Summary Judgment. The undersigned granted Plaintiff's Motion and vacated the September 2, 2014, Order.

Plaintiff has filed a Response to Defendants' Motion for Summary Judgment. Based on the reasons which follow, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

## STATEMENT OF THE CASE

Plaintiff contends that Defendants Marshal and Durden did not allow him to have Santeria bead necklaces or his bible.[1] Plaintiff asserts that these items are necessary to the practice of his religion. Plaintiff also asserts that inmates who are of other faiths are allowed to have their religious items.

Defendants assert that Plaintiff failed to exhaust his administrative remedies prior to the filing of this cause of action. Defendants allege that Plaintiff's injunctive relief claim is moot, as he has been transferred to another penal institution. Defendants also allege that Plaintiff's remaining claims for nominal damages are without merit. Finally, Defendants allege that they are entitled to qualified immunity.

## DISCUSSION AND CITATION TO AUTHORITY

I. **Exhaustion of administrative remedies**

A. **Standard of review**

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss, or treated as such if raised in a motion for summary judgment. Duble v. FedEx Ground Package System, Inc., ___ F. App'x ___, No. 13-12749, 2014 WL 3631905, at *3 (11th Cir. July 14, 2014) (citing Bryant v. Rich, 530 F.3d 1368, 1374–75 (11th Cir. 2008)). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination

---

[1] Defendants are correct that Plaintiff does not bring an allegation against them based on the denial of a cowrie shell necklace in this case. The insertion of such an allegation was due to a scrivener's error and is omitted in this Order.

2

"ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). A judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

B.  Discussion

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

In Turner v. Burnside, 541 F.3d 1097 (11th Cir. 2008), the Eleventh Circuit clarified how the lower courts are to examine the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties'

conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083.

The grievance procedure for the McDuffie County Detention Center provides:

Any inmate shall be entitled to communicate legitimate complaints. Grievances will be in writing.

Grievances may be given to any staff member for prompt transmittal. All grievances must fully describe the factual basis and circumstances of the alleged incident or situation and include a specific complaint and signed by the staff member when picked up.

(Doc. No. 73-3, p. 7). The jail administrator is to make available a grievance form to all inmates on request. The jail administrator responds to the grievance in writing. The jail administrator's decision "may be appealed to the Sheriff within seventy-two (72) hours of the receipt of the grievance decision." (Doc. No. 73-3, p. 13).

Defendants assert that Plaintiff failed to exhaust his administrative remedies under the grievance procedure which was in place at the McDuffie County Detention Center, even though Plaintiff received "clear notice" of the procedure. (Doc. No. 73-5, p. 7). Defendant Durden, who served as the jail administrator and records custodian during the time Plaintiff was housed at McDuffie County Detention Center, declares that his review of Plaintiff's inmate file showed that Plaintiff failed to file any grievance from the first day he was housed at McDuffie County Detention Center until the date he filed this cause of action on October 3, 2012. (Doc. No. 73-3, p. 4, ¶ 12). Defendant Durden states that all inmate grievance and grievance appeal forms which an inmate filed are

4

kept in that inmate's file. (Id.). Defendant Durden also declares that a copy of the Inmate Handbook, which includes the grievance procedure, is posted in plain view to all inmates and is in the inmates' living quarters. Defendant Durden further declares that inmates are typically given a copy of this handbook during the booking process. (Id. at p. 3, ¶ 9).

In contrast, Plaintiff declares under penalty of perjury that he was not given an administrative remedies procedures manual while he was housed at McDuffie County Detention Center, nor were there any postings at the Detention Center announcing an inmate's right to grieve. (Doc. No. 95, p. 67). Plaintiff also declares that he had no means to exhaust his administrative remedies. (Id. at p. 40). Plaintiff asserts in his Complaint that he was never provided with an administrative remedies procedure manual and there was nothing posted about a grievance procedure at McDuffie County Detention Center. Plaintiff also asserts that he asked officials for a grievance form but was not provided with one. (Doc. No. 1, p. 3).[2] Plaintiff notes that he was provided with a manual, but this occurred on April 20, 2013, which was after he filed a complaint with the Office of the Inspector General regarding the living conditions at the Detention Center. (Doc. No. 95, p. 9).

The evidence before the Court reveals genuine disputes as to whether Plaintiff received notice of the grievance procedure in place at McDuffie Detention Center prior to the filing of this cause of action, whether the grievance procedure was posted at the

---

[2] The undersigned notes Plaintiff's submission of the declarations of Brian Bell and Bryant Webb. While Bell and Webb state that they were detained at the McDuffie County Detention Center prior to being incarcerated at FCI Jesup, Bell and Webb discuss time periods which are inapplicable to the events giving rise to Plaintiff's Complaint. Bell and Webb were not housed at the McDuffie County Detention Center at the time Plaintiff arrived at McDuffie in May 2012 and when he filed this Complaint in October 2012, based on their declarations. (Doc. No. 95, pp. 32, 34). Bell's and Webb's declarations are of no evidentiary value.

5

Detention Center, and whether Plaintiff asked for a grievance form and was denied. Thus, the grievance procedure may not have been available to Plaintiff. This portion of Defendants' Motion is **denied**.

## II. Summary judgment

### A. Standard of review

Summary judgment "shall" be granted if "the movant[s] show[ ] that there is no genuine dispute as to any material fact and that the movant[s are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving parties bear the burden of establishing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant[s are] entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to

prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

### B. Injunctive relief

Defendants contend that Plaintiff's injunctive relief claims are moot because he has been transferred to another facility. Under Article III of the Constitution, federal courts may only hear "cases or controversies." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992). "A [claim] is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." See Ethredge v. Hail, 996 F.2d 1173, 1175 (11th Cir. 1993). A claim can still be considered if a court lacks "assurance that there is no reasonable expectation that the alleged violation will recur," or, as it is commonly stated, the situation is "capable of repetition, yet evading review[.]" DiMaio v. Democratic Nat'l Committee, 555 F.3d 1343, 1345 (11th Cir. 2009); Turner v. Rogers, ___ U.S. ___, 131 S. Ct. 2507, 2515 (June 20, 2011). "However, once a prisoner has been transferred, injunctive relief with respect to his confinement at his former place of incarceration is no longer available." Hampton v. Federal Correctional Institution, No. 1:09-CV-00854-RWS, 2009 WL 1703221, *3 (N.D. Ga. June 18, 2009) (citing McKinnon v. Talladega Cnty., 745 F.2d 1360, 1363 (11th Cir. 1984)); Hailey v. Kaiser, 201 F.3d 447, *3 (10th Cir. 1999) (Table).

Plaintiff was being detained at the McDuffie County Detention Center while awaiting trial in federal court on federal charges. Plaintiff has been convicted in federal

AO 72A
(Rev. 8/82)

court and is incarcerated at FCI Jesup. It appears that Plaintiff will not return to the McDuffie County Detention Center prior to his release from federal custody in September 2017. (Doc. No. 73-5, p. 6); http://www.bop.gov/inmateloc, last accessed on Jan. 14, 2015. Thus, Plaintiff's claims for injunctive relief are moot. This portion of Defendants' Motion is **granted**. Accordingly, Plaintiff's RLUIPA claims are **dismissed**. (Doc. Nos. 49, 52) (dismissing Plaintiff's monetary damages claims pursuant to RLUIPA, thus leaving Plaintiff's injunctive relief claims pursuant to this Act pending after Defendants filed a motion to dismiss).[3]

### C. Qualified immunity[4]

Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities, so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1232 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). Government officials must first prove that they were acting within their discretionary authority. Id. at 1233; Ray v. Foltz, 370 F.3d 1079, 1081–82 (11th Cir. 2004). "A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this

---

[3] Ronnie Williamson, the Chief Deputy at the McDuffie County Sheriff's Office, declared that the McDuffie County Sheriff's Office received no federal financial assistance in 2012 or 2013 in connection with the operation or maintenance of the McDuffie Detention Center or for any programs as the Detention Center. (Doc. No. 61-1, p. 1). Plaintiff offers no evidence to refute this declaration. Because there is no genuine dispute as to any fact material to Plaintiff's RLUIPA claims, his RLUIPA claims are **dismissed** for this reason, as well.

[4] Defendants mention that Plaintiff appears to hold them liable based on their supervisory positions, which he cannot do in a section 1983 cause of action. (Doc. No. 73-5, p. 3). However, Defendants fail to make any legal argument in this regard, and the undersigned will not address any putative respondeat superior assertions.

AO 72A
(Rev. 8/82)

authority." Hill v. DeKalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1185 n. 17 (11th Cir.1994). Once the government official has shown he was acting within his discretionary authority, the burden shifts to the Plaintiff to show that the Defendant is not entitled to qualified immunity. The Supreme Court has established a two-part test to determine the applicability of qualified immunity: the court must determine whether plaintiff's allegations, if true, establish a constitutional violation, and whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001)[5]; Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).

### 1. First amendment claims

Defendants assert that the First Amendment does not require that jail officials must allow inmates to wear jewelry and does not necessarily require the provision of all reading materials, particularly those which are written in a language other than English. Defendants allege that the ban on inmate jewelry, including necklaces, is related to inmate and staff safety. Defendants also allege that Plaintiff received an exception to this general rule and was allowed to have one (1) bead necklace. Defendants contend that banning additional necklaces placed no more than a de minimis burden on Plaintiff's religious exercise. Defendants contend that, after Plaintiff filed this cause of action, Defendant Durden provided Plaintiff with the particular book he wanted. Defendants allege that, to the extent this book was withheld from Plaintiff, it was done by someone other than Defendants, and there was no reason for officials to know the content of this book because it was written in Spanish. Defendant Durden states that he understands very few Spanish words. (Doc. No. 73-3, p. 2).

---

[5] In Pearson v. Callahan, 555 U.S. 223, 236 (2009), the Supreme Court held that courts can exercise discretion in deciding which of the two Saucier prongs should be addressed first in light of the particular case at hand.

9

Plaintiff contends that Defendants completely ignored his claim that it is a sincerely held belief that he must wear his beads and that his failure to wear the beads is believed to result in "life altering adverse consequences." (Doc. No. 95, p. 5). Plaintiff asserts that Defendants' characterization of the beads as jewelry is inaccurate. Plaintiff also asserts that adherents of the Santeria religion believe that a person must wear beads of certain color combinations to protect that person from danger and evil. Plaintiff alleges that Defendants' actions placed a substantial burden on his sincerely held religious belief. Plaintiff also alleges that he should have been allowed to have his bible because Spanish-speaking inmates are allowed to have possession of their Christian bibles written in Spanish. Plaintiff avers that there were no alternative means for him to adhere to his religious beliefs other than by wearing more than one bead necklace or color. Plaintiff concedes that the prevention of inmate fights and the creation of a black market in the jail are legitimate governmental interests in not allowing inmates to wear jewelry, but these reasons do not apply because his bead necklaces are not jewelry. Plaintiff contends that Defendants' response was exaggerated in light of the facts before this Court.

The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). Prisoners retain their First Amendment rights, including rights under the free exercise of religion clause; however, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Brunskill v. Boyd, 141 F. App'x 771, 774 (11th Cir. 2005) (quoting O'Lone v. Estate of

Shabazz, 482 U.S. 342, 348 (1987)). Deference is given to prison officials, and, as a result, courts employ a "reasonableness" test to determine whether a regulation infringes constitutional rights. Id. The Supreme Court has outlined four factors to be considered in determining the reasonableness of a regulation: (1) "whether the regulation has a valid, rational connection to a legitimate governmental interest;" (2) "whether alternative means are open to inmates to exercise the asserted right;" (3) "what impact an accommodation of the right would have on guards and inmates and prison resources;" and (4) "whether there are ready alternatives to the regulation." Turner, 482 U.S. at 89-91. The fourth factor asks whether "a prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal." Overton v. Bazzetta, 539 U.S. 126, 136 (2003).

Defendant Durden avers that there are policies and procedures in place which govern the items inmates are allowed to possess, and these policies and procedures "are designed to provide for the safety and security of inmates, officers, other workers at the Jail, visitors to the Jail[,] and the general public." (Doc. No. 61-2, p. 1). Defendant Durden asserts that inmates are prohibited from possessing jewelry, as inmates may steal or fight over jewelry, jewelry can be used as a form of currency, and some pieces of jewelry can be used to harm other inmates or staff. (Id. at p. 2). Defendant Durden declares that it is also a time-consuming task for officers to monitor inmates who have jewelry, so the prohibition against its possession allows the officers to focus on other tasks. (Id.). Defendant Durden also declares that Plaintiff was allowed to keep one

AO 72A
(Rev. 8/82)

bead necklace and was given his bible after review and discussion as accommodations for his religious desires. (Id.; Doc. No. 73-3, p. 2).

Plaintiff admits that he was given his bible and one bead necklace after he filed this cause of action. (Doc. No. 95, p. 30). However, Plaintiff declares that Defendant Durden told him he would have to research whether Plaintiff should have any more than the one bead necklace, yet Defendant Durden did not get back to him. (Id.).

For qualified immunity purposes, the undersigned accepts that Defendants were acting within their discretionary authority. The burden then shifts to Plaintiff to show that Defendants are not entitled to qualified immunity on Plaintiff's First Amendment claims. While Plaintiff asserts in his Statement of Material Facts that he "disputes" that Defendants were not aware of violations of his religious rights, this assertion fails. Plaintiff cites nothing in the record to support his assertion. FED. R. CIV. P. 56(c) (a party asserting that a fact is genuinely disputed must cite to the record); FED. R. CIV. P. 56(e) (a fact asserted by a party should be properly supported). In addition, the evidence before the Court reveals that Defendants followed the policies in place at the Detention Center by not allowing Plaintiff to possess his bead necklaces, which is reasonably related to the legitimate governmental interests of safety and security (which Plaintiff concedes). Defendants provided Plaintiff with accommodations by allowing him to have one bead necklace and by giving Plaintiff his bible after Defendant Durden was able to discern the nature of the book, which was written in Spanish. These accommodations provided Plaintiff with an alternative means to practice his religion, even if he was not allowed to have all of the bead necklaces he desired or believes he had to wear. In addition, Defendants' proffered reasons of safety and security, as well

AO 72A
(Rev. 8/82)

as allowing staff to focus on things other than the inmates who possessed jewelry, in disallowing Plaintiff to have all of the necklaces he desired was the least intrusive means of accomplishing the stated legitimate goals. Further, Defendants accommodated Plaintiff, as noted previously. Finally, the undersigned discerns no alternative means for Detention Center staff to have in place to regulate their policy against jewelry. Defendants did not unconstitutionally abridge Plaintiff's right to exercise his religion, and accordingly, there is no constitutional violation. Plaintiff has failed to meet his burden of establishing that Defendants are not entitled to qualified immunity. This portion of Defendants' Motion is **granted**.

### 2. Equal protection claims

Defendants aver that Plaintiff cannot show that another inmate was treated better than he was. Defendants contend that Plaintiff also cannot show that any alleged discriminatory treatment was based on a prohibited classification. Defendants also contend that any denial of religious items was due to a lack of notification to an appropriate jail official and/or because all inmates are generally denied jewelry. Defendants contend that Plaintiff cannot show that either Defendant knew about or made any decision concerning his religious items before he filed this Complaint, and he cannot show discriminatory intent.

Plaintiff contends that Defendants "have omitted and thus, conceded . . . Plaintiff's claims stating that Muslim inmates are allowed to possess" certain religious items because the "Muslim's (sic) religious items pose not 'security' or 'safety' threat." (Doc. No. 95, p. 4). Plaintiff also asserts that Spanish speaking inmates are allowed to have Christian bibles written in Spanish.

"To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the [government] engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1318–19 (11th Cir. 2006) (internal citation omitted). The equal protection clause prohibits only intentional discrimination. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Plaintiff cites to no objective evidence to support his contention that Defendants treated similarly situated inmates more favorably than he was treated. Rather, Plaintiff makes these blanket assertions in his Response to Defendants' Motion. Defendants have admitted nothing by omission. Instead, Defendants note that Plaintiff cannot meet his burden of establishing a genuine dispute as to a material fact on his equal protection claim, which must be accomplished by citations to the record. Additionally, Plaintiff fails to show that a non-Spanish speaking inmate who desired to have a bible written in Spanish and that an inmate who desired more than one bead necklace was provided with these items during the time period in which he was not. In short, Plaintiff fails to establish that Defendants violated his right to equal protection. Defendants are entitled to qualified immunity in the absence of a genuine dispute as to any fact material to this alleged constitutional violation. This portion of Defendants' Motion is **granted**.

AO 72A
(Rev. 8/82)

## CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment is **DENIED** as to the exhaustion of administrative remedies defense, but otherwise is **GRANTED**. Plaintiff's Complaint is **DISMISSED**, with prejudice. The Clerk of Court is directed to enter the appropriate judgment of dismissal.

**SO ORDERED**, this 20th day of January, 2015.

_____
JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)